CARRIE ENSIGN, Respondent, *v.* THE CENTRAL NEW YORK TELEPHONE AND TELEGRAPH COMPANY, Appellant.

*Negligence—fall of a limb of a tree on a telephone pole breaking it and causing the wire to sag and catch the top of a passing carriage — liability of the telephone company.*

In an action brought against a telephone company to recover damages for personal injuries sustained by the plaintiff, it appeared that at a certain point the defendant's telephone line crossed from the north to the south side of a public highway; that the last pole on the north side of the highway was set about six feet from the base of an old maple tree which was about two and a half feet in diameter. After the pole had been in position for some years a thunder storm, accompanied by wind, occurred, causing a limb of the maple tree, which was from fifteen to eighteen inches in diameter and thirty-five or forty

feet long, and weighed several hundred pounds, to fall upon the wires and pole, breaking the pole in two places. The pole was decayed, but the force exerted by the falling limb was such that it would have broken a perfectly sound pole. The wires crossing the highway were not broken, but were pressed down so that they were only six or eight feet above the ground.

Shortly after the limb fell, the plaintiff drove along the highway, and, she not seeing the wires, the top of her carriage was caught by one of them as she drove under them and the carriage was overturned, causing her to sustain the injuries in question.

There was evidence that the thunder storm was not extraordinary or unusual in character; that the maple tree had been rotten for years before the telephone line was erected; that the limb which fell was also decayed and had dead limbs on it as large as a person's leg, and that the condition of the tree and the limb could be plainly seen from the road. There was no evidence that the defendant ever inspected the tree.

*Held,* that the questions of the defendant's negligence and of the plaintiff's freedom from contributory negligence were properly submitted to the jury, and that a judgment entered on a verdict in favor of the plaintiff should be affirmed;

That it could not be said, as matter of law, that the falling of this unusally large and partially decayed limb was not a danger reasonable to be apprehended by a prudent person, and that, if it was such a danger, the defendant should have removed the pole or, after obtaining the necessary authority, have removed the tree or the dangerous limb therefrom.

PARKER, P. J., dissented.

APPEAL by the defendant, The Central New York Telephone and Telegraph Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Madison on the 21st day of February, 1901, upon the verdict of a jury for $800, and also from an order entered in said clerk's office on the 21st day of July, 1902, denying the defendant's motion for a new trial made upon a case and exceptions.

*Albert F. Gladding,* for the appellant.

*M. H. Kiley,* for the respondent.

CHASE, J.:

The defendant in 1885 constructed a telephone line between the villages of Cazenovia and Morrisville, Madison county, and other places. In the town of Nelson poles were erected along the north side of the public highway until near the house of one M., and they were then continued on the south side of the highway. The wire

was strung across the highway at that point at a slight angle.   The last pole to the west on the north side of the highway was set about six feet from the base of an old maple tree which was about two and one-half feet in diameter, and was standing in an angle of the highway fence.   In 1898 defendant's employees strung an additional wire on the poles and at that time they tested the pole by the maple tree by pressing against the top of the same with long pike poles and it resisted such pressure.   Said employees then added a guy wire to said pole and fastened the same to a small tree north of the pole.

On the 23d day of June, 1899, there was a thunder shower accompanied by wind, and a limb from said maple tree, which limb was from fifteen to eighteen inches in diameter, and continued that size for ten or twelve feet and then tapered and extended into branches, and was in all thirty-five or forty feet long and weighed several hundred pounds, fell upon the wires and pole, breaking the pole where it entered the ground, and also at a point a short distance below where the wires were fastened thereon.   The wires were not broken, but were held down to the ground, and as so held down crossed the highway at an angle of about forty-five degrees. On the north side of the traveled road they were six feet above the ground, and on the south side of the traveled road they were eight feet about the ground.

Very soon after the limb fell as stated, the plaintiff drove along the highway with a horse and low top carriage.   She did not see the wires, and as she drove under them the top of her carriage was caught by one of the wires and the carriage was overturned, and plaintiff was injured, for which injuries this action is brought.

The accident to the plaintiff occurred so quickly after the wires were down and the highway was obstructed that there is no question in this case of negligence arising from defendant's delay in repairing the line.   The pole was very badly decayed at its base, but it was not only broken at the base, but also a short distance below where the wires were fastened, at which point it was sound.   The defendant has shown that the weight of the limb was such that its fall would have broken a new cedar pole and that the two wires were of sufficient strength to hold a weight of four tons.   This testimony is a concession that the natural and necessary effect of the limb falling

was to break the pole and to press the wires there crossing the highway down so that they would become more or less of an obstruction to travel. The proximate cause of the obstruction to the highway was the falling of the limb. Defendant insists that there was nothing to show that the limb was likely to fall and that the danger was not one reasonably to be apprehended. Whether such contention is correct as a matter of law is the principal question for determination on this appeal. The defendant in the erection and maintenance of its line was not required to exercise extraordinary and unusual care, and it was not obliged to take into account accidents that might possibly arise in case of unusual and extraordinary occurrences that would not reasonably be apprehended by a prudent person. (*Fitch* v. *Central New York Telephone Co.*, 42 App. Div. 321.) The defendant was required to exercise reasonable and ordinary care and such care as an ordinarily prudent person is supposed to exercise in connection with his personal business and transactions. The duty of the defendant to use reasonable and ordinary care extended to the selection and maintenance of the place where the poles and wires were located. We assume that if the defendant had erected a pole at a point of known and conceded danger by reason of an overhanging limb of sufficient weight to break a new telephone pole and that the natural and necessary result of the falling of such limb would be to drop the wire so as to obstruct the public highway that it would be conceded that the erection of a pole at such a place would be negligence on the part of the defendant. Conceding that it is possible for a telephone company to so locate a pole in the immediate vicinity of a known and conceded danger as to make the company liable for damages arising by reason of an obstruction to the highway, on the happening of such known and conceded danger it becomes a question in this case whether the defendant knew or ought to have known that the limb was likely to fall from the tree upon the pole there located as it did in fact fall.

From the evidence in this case the jury might have found that the center of the maple tree had been dead for years before the telephone line was erected; that the dead center dropped out before 1897; that at the time defendant's employees and inspectors were stringing the second wire on the pole in 1897 and for a number of

years prior thereto the tree was old and rotten with large limbs partly dead and that their decayed condition could be plainly seen from the road as a person was going west; that the large limb that fell, although in full leaf so far as it was alive, had dead limbs on it as large as a person's leg, and that where it joined the main trunk of the tree there was a seam, and it was there decayed except for a strip about three inches wide along the lower part thereof that splintered down the tree at the time the limb fell. From the evidence the jury might have found also that the thunder shower and wind was neither unusual nor extraordinary. There is not one word of evidence to show that the defendant's employees looked at the tree or gave it any consideration whatever at the time of the inspection of the poles and the stringing of the second wire, or at any other time. We cannot say, as matter of law, that the falling of this unusually large and partially decayed limb was not a danger reasonably to be apprehended by a prudent person. If the danger was reasonably to be apprehended the defendant should have moved the pole, or, after obtaining the necessary authority, have removed the tree or the dangerous limb therefrom. Plaintiff's contributory negligence was a question of fact. It is suggested that to sustain a verdict of this kind requires a very unusual combination of circumstances, and that a telephone company should not ordinarily be held liable for damages occurring by injury to their poles and wires by the falling of trees or of limbs therefrom. We do not dissent from such suggestion and consider this case on the border line for sustaining a verdict.

Judgment should be affirmed, with costs.

All concurred, except PARKER, P. J., dissenting, and KELLOGG J., not voting.

Judgment affirmed, with costs.